**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**STANLEY SUTTON,**

                      **Plaintiff,**                      **02-CV-0364(Sr)**

**v.**

**CATHY CRIPPEN, L.P.N.,**
                **Defendant.**

---

**DECISION AND ORDER**

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. #31.

Plaintiff filed this *pro se* action seeking relief pursuant to 42 U.S.C. § 1983. Dkt. #1. Plaintiff alleges that on December 12, 2001, while an inmate at the Elmira Correctional Facility, the defendant assaulted him by deliberately and repeatedly positioning a dialysis needle in his arm so as to cause it to improperly infiltrate several dialysis access sites and was deliberately indifferent to his serious medical needs by failing to provide him with proper medical treatment, in violation of his rights under the Eighth Amendment to the United States Constitution. Dkt. #1.

Currently before the Court is defendant's motion for summary judgment. Dkt. #36. For the following reasons, defendant's motion for summary judgment is granted.

## BACKGROUND

Plaintiff, proceeding *pro se*, filed this action on May 17, 2002, pursuant to 42 U.S.C. § 1983, seeking injunctive relief, compensatory damages and punitive damages for a violation of his constitutional rights under the Eighth Amendment to the United States Constitution during his period of incarceration at the Elmira Correctional Facility. Dkt. #1.[1] Specifically, plaintiff complains that while he was incarcerated at the Elmira Correctional Facility, defendant, Kathy Crippen, L.P.N. (incorrectly identified as Cathy Crippen in the caption), assaulted him by deliberately and repeatedly positioning a dialysis needle in his arm so as to cause it to improperly infiltrate several dialysis access sites during dialysis treatment on December 12, 2001, at the Elmira Correctional Facility Dialysis Unit. Dkt. #1. Plaintiff further alleges that defendant was deliberately

---

[1] Plaintiff's claims against defendants, Anthony J. Cooper, Deborah Martin, R. McCabe, Tim Doty, and Marshall Trabout, each supervisory officials from either the New York State Department of Correctional Services or the Arnot Ogden Medical Center, in their individual and official capacities, were dismissed on June 17, 2002, by United States District Judge William M. Skretny pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A. Dkt. #7. Also in his June 17, 2002 Decision and Order, United States District Judge William M. Skretny denied plaintiff's motion for a temporary restraining order/preliminary injunction. *Id*. Plaintiff's claim against defendant Kathy Crippen, L.P.N. (incorrectly identified as Cathy Crippen in the caption) in her individual and official capacity remains and is the subject of the instant motion for summary judgment.

indifferent to plaintiff's medical needs by refusing to treat him and by walking away when he needed medical treatment. *Id*.

At all times relevant to the allegations in the Complaint, plaintiff suffered from chronic renal failure consisting of "progressive and irreversible decline in the ability of the kidney to maintain its internal environment." Dkt. #40, ¶ 7. As a result, plaintiff underwent hemodialysis three times per week to clear substances (particles) from the bloodstream which would normally be excreted by the kidney. Dkt. #40, ¶¶ 7 and 11; *see also* Dkt. #39, ¶ 4. Each hemodialysis would last approximately four hours. Dkt. #39, ¶ 4; Dkt. #40, ¶ 11.

During hemodialysis, a needle is inserted into the patient's arteriovenous system and blood is withdrawn and delivered to the dialysis machine where particles are separated from the bloodstream and the blood is then returned to the patient. Dkt. #40, ¶ 8. Access to the patient's bloodstream is through an arteriovenous access site, known as a fistula. *Id*. A fistula is surgically created under a patient's skin and once created, normally requires six to eight weeks to mature before it may be used as an access site. *Id*. A fistula provides a permanent access site for dialysis. *Id*. For long-term dialysis patients, such as plaintiff, an access site is fragile and infiltration at the access site is a known complication. *Id*. Infiltration occurs when the needle inserted into the fistula or access site does not properly enter or stay placed in the blood vessel and fluid leaks out into the subcutaneous tissue. Dkt. #39, ¶ 7; Dkt. #40, ¶ 9. If infiltration occurs, the needle is removed and pressure, including clamping, and ice are

applied to the affected area.  *Id*.  If possible, the patient is then "re-needled" at a different site.  *Id*.

Nurse Crippen is a licensed practical nurse and has been licensed to provide practical nursing services since 1969 and is also a Certified Dialysis Technician by the Board of Nephrology Examiners, Nursing and Technology and has been so certified since approximately 1979.  Dkt. #39, ¶ 1.   She has been employed by the Arnot Ogden Medical Center for thirty-five years and since 1984, has been assigned to the Elmira Correctional Facility Dialysis Unit where she has provided practical nursing services, including dialysis treatment.  *Id*.  At the time of the incidents alleged in the Complaint, Nurse Crippen had been providing dialysis treatment to plaintiff for approximately seven years.  *Id*. at ¶ 4.

On or about September 25, 2001, approximately eleven weeks prior to the December 12, 2001 incident alleged in the Complaint, a new fistula was surgically created on plaintiff's right arm.  Dkt. #39, ¶ 5; Dkt. #40, ¶ 12; Dkt. #46, ¶ 2.  This new fistula was not ready for use until late November 2001.  Dkt. #39, ¶ 5; Dkt. #40, ¶ 12.  Approximately one week prior to December 12, 2001, Nurse Crippen claims that there was an infiltration in the area of this fistula.  Dkt. #39, ¶ 6; Dkt. #40, ¶ 13.  Plaintiff claims, however, that there was never an infiltration of this fistula prior to December 12, 2001.  Dkt. #46, ¶ 5.

On December 12, 2001, plaintiff was present in the Elmira Correctional Facility Dialysis Unit for a regularly scheduled dialysis treatment and plaintiff informed Nurse Crippen that his new right arm fistula was sore. Dkt. #39, ¶ 6; Dkt. #40, ¶ 13. Accordingly, plaintiff requested that Nurse Crippen use his lower right arm for dialysis treatment. *Id*. Although using plaintiff's lower right arm limited the choices where a venous needle could be inserted so as to guard against the possibility of recirculation or infiltration, Nurse Crippen complied with plaintiff's request. Dkt. #39, ¶¶ 8-9; Dkt. #40, ¶¶ 14-15.

According to Nurse Crippen, she prepared and numbed an access site on plaintiff's lower right arm by injecting novocaine or a similar anesthetic under the skin and inserted a venous needle; thereafter, the dialysis treatment commenced. Dkt. #39, ¶ 9; Dkt. #40, ¶ 15. Plaintiff maintains that as Nurse Crippen began to insert the needle, he became concerned because of the angle and position of the needle and he requested that she "flatten out the needle because the vessel is shallow, and not to angle [sic] needle in such a manner." Dkt. #46, ¶¶ 8-9. Plaintiff further maintains that Nurse Crippen ignored his request and "positioned the needle straight and with full thrust [sic] pushed." Dkt. # 46, ¶ 10. Thereafter, plaintiff stated that the venous site was infiltrated. Dkt. #39, ¶ 10; Dkt. #40, ¶ 16; Dkt. #46, ¶ 10. Nurse Crippen examined the site and noted slight swelling due to the location and numbing of the site, but did not conclude that infiltration had occurred. Dkt. #39, ¶ 10; Dkt. #40, ¶ 16. Nurse Crippen marked the swelling with a pen in order to monitor any increase in swelling. *Id*. Despite the fact that Nurse Crippen did not believe that an infiltration had occurred, plaintiff

requested that she access a second venous site. *Id*. Nurse Crippen complied with plaintiff's request. *Id*.

The venous needle was removed from plaintiff's lower right arm and plaintiff applied pressure to the site while Nurse Crippen prepared and inserted another venous needle into a different access site on plaintiff's upper right arm. Dkt. #39, ¶ 11; Dkt. #40, ¶ 17. Dialysis treatment, using the second access site, commenced and initially proceeded without complication. Dkt. #39, ¶ 12; Dkt. #40, ¶ 18. According to plaintiff, he requested that Nurse Crippen "flatten the needle because the vessel is shallow." Dkt. #46, ¶ 11. Furthermore, plaintiff states, "[t]he defendant sucked her teeth [sic] positioned the needle in a manner that most concerned the plaintiff, and with a straight forward thrust down [sic] of the needle into the vessel and cause [sic] a larger infiltration of the vessel while increasing the blood flow." Dkt. #46, ¶ 11. According to both plaintiff and defendant, the second site did infiltrate. Dkt. #39, ¶ 12; Dkt. #40, ¶ 8; Dkt. #46, ¶ 11. At plaintiff's request and with the assistance of Nurse Malinowski, Nurse Crippen was able to restart dialysis treatment using plaintiff's left arm. Dkt. #39, ¶ 13; Dkt. #40, ¶ 19.

After dialysis treatment was restarted on plaintiff's left arm, Nurse Crippen states that she asked plaintiff to either apply pressure to the site on his upper right arm that had infiltrated or to allow a clamp to be applied to the infiltrated area so that the needle could be removed and ice could be applied to the area. Dkt. #39, ¶ 14; Dkt. #40, ¶ 20. According to Nurse Crippen, plaintiff refused and stated that he did not want

any pressure on his arm.  *Id*.  Nurse Crippen advised plaintiff that although she could delay applying pressure for a short time, the needle needed to be removed and ice needed to be applied.  Dkt. #39, ¶ 15; Dkt. #40, ¶ 21.  Conversely, plaintiff claims that he asked Nurse Crippen to "pull the needle because of the pain .... [t]he defendant refused and walked away."  Dkt. #46, ¶ 13.  Thereafter, plaintiff claims that he became upset and "[t]he pain became so unbearable that I pulled the neddle [sic] and blood came shooting out."  Dkt. #1, p.6; *see also* Dkt. #46, ¶ 14.  Nurse Crippen asserts that plaintiff became very angry and verbally abusive and removed the needle himself without any medical assistance and caused blood to spurt onto plaintiff's chair and onto the floor.  Dkt. #39, ¶ 16; Dkt. #40, ¶ 23; Dkt. #46, ¶ 14.

Following this incident, Nurse Crippen requested that Charge Nurse Gary Klein assume responsibility for treating plaintiff because she concluded that plaintiff no longer wanted her assistance and that her continued treatment of plaintiff would be detrimental to the successful completion of plaintiff's dialysis treatment.  Dkt. #39, ¶¶ 17-18; Dkt. #40, ¶¶ 24-25.  Accordingly, Nurse Crippen had no further contact with plaintiff on December 12, 2001.  *Id*.  Plaintiff completed a Refusal of Medical Examination and/or Treatment Form on December 12, 2001 stating, "I will refuse to have Nurse Cathy Crippen further tend to me anytime.  Based upon her assaulting me with the needle then walking away when I ask [sic] to stop and remove the needle.  I further refuse any blood pressures to prevent her from coming around me."  Dkt. #40, Exhibit A.

Plaintiff complained to the administration at the Elmira Correctional Facility and to the Arnot Ogden Medical Center about the care and treatment that Nurse Crippen provided to him on December 21, 2001. Dkt. #39, ¶ 20. Following an investigation by the Arnot Ogden Medical Center, plaintiff was advised by letter dated February 21, 2002, that a thorough review of his care was conducted and that it was determined that his care was appropriate and that his allegations were unfounded. Dkt. #39, ¶ 21; Dkt. #40, ¶ 37 and Exhibit A. Plaintiff was further advised in the February 21, 2002 letter that, "[t]he venous site for dialysis patients can be fragile and infiltration at the access site is a known complication with long-term dialysis patients." *Id*.

At all times relevant to the allegations in the Complaint, the care provided to plaintiff by Nurse Crippen was found to be in accordance with the policies of the Arnot Ogden Medical Center and the Elmira Correctional Facility Dialysis Unit. Dkt. #39, ¶ 28; Dkt. #40, ¶ 38. Moreover, at no time relevant to the allegations in the Complaint, did Nurse Crippen make or maintain any policy concerning the medical treatment of inmates nor did Nurse Crippen make or maintain any policy that violated the plaintiff's rights. *Id*.

At all times relevant to the allegations in the Complaint, Luis Tapia, M.D. was the Medical Director for Nephrology Services at the Arnot Ogden Medical Center and was responsible for the oversight of the Elmira Correctional Facility Dialysis Unit. Dkt. #40, ¶ 1. In his capacity as the Medical Director for Nephrology Services at that time, Dr. Tapia diagnosed and treated patients and monitored and reviewed the

inpatient records and outpatient dialysis treatment records of the Elmira Correctional Facility Dialysis Unit.  Dkt. #40, ¶ 6.  Dr. Tapia reviewed the actions taken by Nurse Crippen on December 12, 2001, and determined that she properly provided dialysis care and treatment to the plaintiff on that date.  *Id*.  Based on his review of plaintiff's medical records, Dr. Tapia further concluded that there was nothing remarkable about the infiltration that occurred on December 12, 2001, nor was there any indication that Nurse Crippen deliberately infiltrated plaintiff's access sites during his dialysis treatment.  Dkt. #40, ¶ 10.  Finally, Dr. Tapia opined that there were no objective findings that Nurse Crippen deliberately caused plaintiff's access site on his upper right arm to infiltrate on December 12, 2001.  Dkt. #40, ¶ 32.  Rather, Dr. Tapia concluded that plaintiff's medical record established that Nurse Crippen properly followed established procedure when she accessed plaintiff's arteriovenous system to commence dialysis treatment and provided proper care and treatment with regard to the infiltrated area on plaintiff's upper right arm.  *Id*.

## DISCUSSION AND ANALYSIS

Defendant argues that she is entitled to summary judgment because (1) plaintiff has failed to establish that he suffered from a sufficiently serious medical condition and has failed to establish that the defendant was deliberately indifferent to plaintiff's medical needs, and (2) that she is entitled to qualified immunity.  Because the Court agrees that defendant is entitled to judgment as a matter of law on the grounds that plaintiff has failed to establish that he suffered from a sufficiently serious medical condition so as to constitute a violation of his rights under the Eighth Amendment to the

United States Constitution and that defendant was deliberately indifferent to his medical needs, the Court need not reach the issue of whether defendant is entitled to qualified immunity.

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Deliberate Indifference to Serious Medical Needs**

In *Estelle v. Gamble*, the United States Supreme Court determined that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" to the United States Constitution. 429 U.S. 97, 104 (1976). To establish an unconstitutional denial of medical care that rises to the level of an Eighth Amendment violation, a plaintiff (prisoner) must prove, beyond mere conclusory allegations, that the defendant acted with "deliberate indifference to [his] serious medical needs." *Estelle*, 429 U.S. at 104. More specifically, the prisoner must demonstrate both that the alleged deprivation is, in objective terms, "sufficiently serious," and that, subjectively, the defendant is acting with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995). Both the objective and subjective

components must be satisfied in order for a plaintiff to prevail on his claim.  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

### Objective Component

Under the objective component, in assessing whether a medical condition is "sufficiently serious," the Court considers all relevant facts and circumstances, including whether a reasonable doctor or patient would consider the injury worthy of treatment; the impact of the ailment upon an individual's daily activities; and, the severity and persistence of pain.  *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  *Id.*  Indeed, the Second Circuit has held that the alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists."  *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998).  "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm."  *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003).

The types of conditions which have been held to meet the constitutional standard of serious medical need include:  the failure to treat a painful and disfiguring facial keloid,  *Brock v. Wright*, 315 F.3d 158, 160 (2d Cir. 2003); refusal to treat a cavity at risk of "acute infection[ ], debilitating pain and tooth loss" unless prisoner consented

-12-

to extraction of another diseased tooth, *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000); untreated dental problems that resulted in chronic pain for a period of six months resulting in tooth degeneration, *Chance*, 143 F.3d. at 702; failure to treat a ruptured Achilles tendon which resulted in swelling and pain, *Hemmings*, 134 F.3d at 106-07; confiscation of prescription eyeglasses necessary to correct serious vision problem and subsequent denial of medical treatment resulting in loss of vision in one eye, *Koehl v. Dalsheim*, 85 F.3d 86, 87-88 (2d Cir. 1996); failure to remove broken hip pins from prisoner's hip for over three years despite prisoner's complaint of persistent pain, *Hathaway*, 37 F.3d at 64-65; and, loss of an ear where doctor threw away prisoner's ear and stitched up the stump, *Williams v. Vincent*, 508 F.2d 541, 543 (2d Cir. 1974).

Here, plaintiff's chief complaint, that he suffered from extreme pain following what he claims was the intentional infiltration of his access sites during dialysis treatment, is far from resembling the foregoing serious medical problems. There is no dispute that plaintiff suffers from chronic renal failure, a serious medical condition. Dkt. #37, p.7. It is equally undisputed that plaintiff did not suffer any serious medical harm from the care and treatment provided by Nurse Crippen on December 12, 2001. *Id*. at p.8. Indeed, plaintiff does not allege that he suffered any injury as a result of the infiltration that occurred or that he endured any ongoing complication and/or medical consequences with respect to his dialysis treatment on December 12, 2008 or any treatment thereafter. *Id*. At most, plaintiff asserts that he suffered from "extreme pain." However, plaintiff's Complaint and opposition to defendant's motion for summary

judgment fail to offer any specificity with respect to the "extreme pain" that he claims he suffered. The record before the Court is utterly devoid of any mention by plaintiff of any impact on his daily activities, or the severity or persistence of pain as a result of the dialysis treatment rendered on December 12, 2001. Absent any evidence to support a conclusion that plaintiff suffered a serious medical condition as a result of Nurse Crippen's care and treatment on December 12, 2001, other than plaintiff's allegations that he suffered from extreme pain, plaintiff fails to satisfy the objective element of his deliberate indifference claim.

Plaintiff also claims that Nurse Crippen refused his request to remove the needle from the infiltrated access site and thus, forced him to remove the needle himself. "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original), *quoting Chance*, 143 F.3d at 702. Moreover, although an Eighth Amendment violation may be based upon exposure to an unreasonable risk of future harm, "the absence of present physical injury will often be probative in assessing the risk of future harm." *Smith*, 316 F.3d at 188. Based on the undisputed facts before the Court, any delay that occurred in the removal of the needle from the infiltrated access site on plaintiff's upper right arm was minimal. Moreover, plaintiff fails to articulate any physical injury or

consequence as a result of this alleged delay. As a result, plaintiff has failed to satisfy the objective component of the deliberate indifference standard.

### **Subjective Component**

The subjective component for the establishment of a claim of deliberate indifference to a serious medical need requires that the plaintiff establish that the defendant acted with a "sufficiently culpable state of mind" so as to violate the Eighth Amendment's cruel and unusual punishment clause. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hathaway*, 37 F.3d at 66, *quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In *Estelle*, the Supreme Court ruled that deliberate indifference may manifest itself in a doctor's refusal to administer needed treatment, a prison guard's intentional denial or delay in granting an inmate access to medical care, or intentional interference with prescribed treatment. *Estelle*, 429 U.S. at 104-05.

"The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge than harm will result.'" *Hathaway*, 99 F.3d at 553, *citing Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003), *cert. denied*, 543 U.S. 1093 (2005). The Supreme

Court further stated in *Estelle* that, "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Estelle, 429 U.S. at 105-06.  Thus, the Supreme Court added,

> [a] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id*. at 106; *see also Chance*, 143 F.3d at 703 (stating "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation").

Where, as here, the prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment.  Rather, "[p]rison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates [and] courts have repeatedly held that a prisoner does not have the right to the treatment of his choice."  *Ross v. Kelly*, 784 F.Supp. 35, 44-45 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.1992) (internal citations omitted).

In her motion for summary judgment, Nurse Crippen asserts that, "[p]laintiff's allegations ... are at most negligence or malpractice and do not rise to the

level of a constitutional violation." Dkt. #37, p.12. Nevertheless, Nurse Crippen maintains that the record establishes that she was neither negligent nor that her conduct could be characterized as medical malpractice. *Id*. Accordingly, she asks this Court to find, as a matter of law, that plaintiff is unable to establish that (1) he suffered from a serious medical condition and (2) that she was deliberately indifferent to his medical needs. As noted above, the Court agrees with the defendant that the record is devoid of any evidence to support a finding that plaintiff suffered from a serious medical condition as a result of the care and treatment he received on December 12, 2001. Moreover, the Court agrees with the defendant that plaintiff also fails to satisfy the subjective component of the deliberate indifference standard.

Plaintiff claims that Nurse Crippen deliberately infiltrated his access sites. However, there is nothing in the record to establish any intent on the part of Nurse Crippen to do so. To the contrary, the undisputed record unequivocally establishes that Nurse Crippen made every effort to comply with plaintiff's requests, properly followed procedure when accessing plaintiff's arteriovenous system to commence dialysis treatment and provided proper care and treatment to the infiltrated area on plaintiff's upper right arm. Dkt. #40, ¶ 32. Moreover, it is equally undisputed that venous sites for dialysis patients can be fragile and infiltration at the access site is a known complication with long-term dialysis patients, such as plaintiff. *Id*. at ¶ 8.

The record clearly establishes that (1) the defendant made every effort to promptly treat and remove the needle from the infiltrated area; (2) despite her efforts,

plaintiff refused her suggested treatment and pulled the needle from the infiltrated area himself; and (3) the defendant recognized that her continued care and treatment of plaintiff would be detrimental to the successful completion of plaintiff's dialysis treatment and therefore, asked Charge Nurse Klein to take over plaintiff's dialysis treatment.  Additionally, it is undisputed that there was nothing remarkable about the infiltration that occurred.  Finally, the Court agrees with the defendant that plaintiff's allegations are, at most, claims of negligence or medical malpractice and thus, do not create a cause of action that rises to the level of a constitutional violation.  Therefore, the Court finds that plaintiff's claim of deliberate indifference by the defendant is without merit.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment (Dkt. #36) is **GRANTED.**

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

DATED:    Buffalo, New York
          November 6, 2008

                                        s/ H. Kenneth Schroeder, Jr.
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**